## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JUAN FELIZ,

                                      Plaintiff,

        v.                                            9:17-CV-1294
                                                    (DNH/ATB)

VONDA JOHNSON, AMBER LASHWAY, and
PAUL HARRIMAN

                                    Defendants.

JUAN FELIZ, Plaintiff, pro se
KEITH J. STARLIN, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge. Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, claiming that he was denied constitutionally adequate medical care. Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 26). Plaintiff has responded in opposition to the motion. (Dkt. No. 30). For the following reasons, this court will recommend granting the defendants' motion.

### I.    Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir.

2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## II.   Exhaustion of Administrative Remedies

### A.   Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), abrogated on other grounds by *Ross v. Blake,* 380 F. 3d. 670 (2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse

3

decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (i), 701.5.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v.*

4

*Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id; see also Riles*, 2016 WL 4572321 at *2. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

### B.    Relevant Facts and Contentions

The following facts are undisputed: In 2013, prior to his incarceration, plaintiff was diagnosed with and treated for cancer. In 2016, plaintiff was received into the custody of the New York City Department of Corrections, where he was provided further cancer treatment. Several months later, plaintiff was transferred into DOCCS custody. Plaintiff was initially placed at Downstate Correctional Facility, but was moved to Clinton Correctional Facility ("Clinton C.F.") in approximately December 2016.

Plaintiff alleges, inter alia,[1] that during his incarceration at Clinton C.F. defendants Vonda Johnson, M.D. ("Johnson"), Amber Lashway, N.P. ("Lashway"), and

---

[1]Plaintiff's complaint alleges other civil rights causes of action, against various defendants, however only an Eight Amendment claim for deliberate indifference against defendants Johnson, Lashway and Harriman survived initial review by Judge Hurd. (Dkt. No. 4).

Nurse Administrator Paul Harriman ("Harriman") "sought to alter [plaintiff's] medical records by having it read that [plaintiff does not] have cancer." (Dkt. No. 1 at 5). Plaintiff claims that he was denied necessary medical treatment for his cancer as a result of the defendants' alleged conduct, causing the cancer to progress to an "incurable stage." (*Id.*). Defendants deny plaintiff's contention that they "altered" plaintiff's medical records, and have moved for summary judgment, based on various arguments, including failure to exhaust the available administrative remedies prior to filing suit. (Dkt. No. 26-28 at 2-8).

In support of their motion, defendants filed various affidavits and exhibits purporting to constitute plaintiff's relevant DOCCS grievance history. According to the records filed by defendants, plaintiff filed four grievances while incarcerated at Clinton C.F. and six grievances during his subsequent incarceration at Franklin C.F. (Dkt. Nos. 26-13, 26-19). The grievances vary in subject matter, including complaints regarding medical care, lack of translation services, and one grievance complaining that plaintiff's handcuffs were too tight. (*Id.*).

Significant to the instant matter is grievance number FKN-13836-17, filed by plaintiff on November 13, 2017 at Franklin C.F. (Dkt. No. 26-21). The grievance expresses plaintiff's complaints regarding his medical care at both Clinton C.F. and Franklin C.F., and states in relevant part:

> I was sent to Clinton where they falsified documents saying I had no cancer, I do have it. The reason they did those fake diagnosis, is so they don't have to give me cancer treatments. The reason why I am exposing the medical staff upstate is because this happens to many other prisoners who need medical help. I do[ ] not want them to deny medical help to others, including myself.

6

> The name of the Doctor in Clinton is Vonda Johnson (M.D.) [sic]
> Amber Lashway (N.P.)[.] Due to this delay I have terminal cancer
> in the 4th stage.

(*Id.* at 10).  The IGRC responded, in writing, to grievance FKN-13836-17 on November 16, 2017, stating: "Franklin Correctional Facility has made follow up appointments with multiple doctors for near future." (*Id.* at 11).  Plaintiff appealed the IGRC decision to the Superintendent on November 16, 2017.[2] (*Id.*).

Plaintiff submitted another grievance regarding his medical care and treatment on November 18, 2017, which was filed as an addendum to pending grievance FKN-13836-17. (Dkt. No. 26-21 at 7).  Plaintiff subsequently prepared another grievance, filed on November 27, 2017, wherein he claimed to have done "everything possible" in terms of following DOCCS grievance protocol, and further stated he felt "obligated to proceed with legal action" in light of an alleged three month delay in his cancer treatment. (Dkt. No. 26-21 at 5-6).  The November 27, 2017 grievance was also filed as an addendum to pending grievance FKN-13836-17. (Dkt. No. 26-17 at 15).

The Superintendent responded to plaintiff's appeal of the IGRC response on November 30, 2017, fourteen days after receipt of plaintiff's appeal, finding plaintiff's assertions regarding his medical care to be without merit. (Dkt. No. 26-21 at 3). Plaintiff appealed the Superintendent's decision to CORC on December 1, 2017. *Id.*

---

[2]Plaintiff appears to have dated his appeal of the IGRC response as "11-11-17," however the IGRC response form indicates it was returned to plaintiff on November 16, 2017. (Dkt. 26-21).  In any event, the grievance clerk's receipt of plaintiff's appeal of the IGRC response is dated November 16, 2017. (*Id.*).

## C.   Analysis

Defendants argue that the complaint should be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing this federal action, as required by the PLRA.  (Dkt .No. 26-28 at 4-8).  Plaintiff contends that he appealed all grievances filed at Clinton C.F. and Franklin C.F.  (Dkt. No. 30-1 at 12).  Plaintiff argues, in the alternative, that he wasn't provided sufficient translation services in order to complete the requisite grievance process.  (*Id.* at 12–13).  Finally, plaintiff asserts that the "grievance process does not apply in this case because the issue did not start here (DOCCS)."  (*Id.* at 13).

The DOCCS Inmate Grievance Program ("IGP") requires an inmate to adhere to specific deadlines with respect to the filing of a grievance and any ensuing appeals.  An inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a) (2010). A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id*. at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

A grievant may appeal the IGRC decision to the facility's Superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* at § 701.5(c)(1). If

the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the Superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* at § 701.5(c)(3)(ii).

A grievant may appeal to CORC within seven working days of receipt of the Superintendent's written decision. *Id*. at 701.5(d)(1)(i). The CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at § 701.5(d)(3)(ii). Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.") (quotations and citations omitted) ); see *Neal v. Goord*, 267 F.3d 116, 123 (2d Cir. 2001), overruled on other grounds by *Porter v. Nussle*, 534 U.S. 516 (2002) (holding exhaustion under the DOCCS IGP is not complete until the grievance has been appealed to CORC and CORC has issued a decision); *Singh v. Goord*, 520 F. Supp. 2d 487, 495 (S.D.N.Y. 2007) (complete exhaustion to CORC, the highest level, is required).

Here, the record shows that plaintiff filed a grievance pertaining to the alleged falsification of his medical records by staff at Clinton C.F. (Dkt. No. 26-21 at 10). The IGRC timely responded to plaintiff's grievance on November 16, 2017, and plaintiff

properly appealed the IGRC response, which appeal was received by the

Superintendent the same day. (Dkt. No 26-21 at 11). Plaintiff, however, proceeded to

file the federal complaint in this action on November 27, 2017, three days before the

Superintendent issued a response to plaintiff's administrative appeal. (Dkts. No. 1; 26-

21 at 3). As such, and despite plaintiff's claim to the contrary, he did not fully exhaust

his administrative remedies prior to commencing this action, because he filed his

federal complaint before completing the DOCCS grievance process. Any efforts

plaintiff may have made since the filing of his complaint, including his subsequent and

timely appeal to CORC, do not cure his failure to exhaust, because the PLRA requires

that administrative remedies be exhausted before commencing a lawsuit. See *Neal*, 267

F.3d at 121 ("[E]xhausting administrative remedies after a complaint is filed will not

save a case from dismissal."); see also *Chalif v. Spitzer*, No. 9:05-CV-1355

(LEK/DEP), 2008 WL 1848650, at \*13 (N.D.N.Y. Apr. 23, 2008) (complete

exhaustion must have occurred prior to the time the action was commenced); *Pettus v.

McCoy*, No. 9:04-CV-0471 (TJM), 2006 WL 2639369, at \*1 (N.D.N.Y. Sept. 13, 2006)

(dismissing action because the inmate-plaintiff filed the complaint "prior to fully

completing the administrative review process.").

Furthermore, there is no indication on the record that the grievance process was

unavailable to the plaintiff. At the time of the relevant events of this action, both

Clinton C.F. and Franklin C.F. had a grievance program, through which plaintiff had

filed multiple grievances.  (Dkt. Nos. 26-13; 26-19).  In his opposition papers, plaintiff

appears to argue the program was unavailable to him because Clinton C.F. did not

provide a translator to assist him in the grievance process.  (Dkt. No. 30-1 at 12-13).

Regardless, plaintiff filed grievance FKN-13836-17 while incarcerated at Franklin

C.F., and as such the availability of a translator at Clinton C.F. has no bearing on the

instant matter.[3]

Plaintiff also argues that the grievance process does not apply to the instant

matter, because "the issue [i.e. cancer] did not start" within DOCCS.  *Id.* at 13).

Nevertheless, to the extent plaintiff is alleging deliberate indifference on the part of the

Clinton C.F. medical staff with respect to his cancer treatment while incarcerated

therein, plaintiff was required to follow the DOCCS grievance process prior to filing

his federal complaint.  The Supreme Court has held that this exhaustion requirement

"applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some

other wrong."  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Moreover, claims for

---

[3]The court further notes that despite the alleged unavailability of an English/Spanish translator, plaintiff successfully initiated four grievances at Clinton C.F., three of which he appealed to the Superintendent.  (Dkt. Nos. 26-13; 26-14; 26-15; 26-16). Furthermore, the plaintiff's grievance history indicates that translation services were available to plaintiff with respect to preparing his grievances at both Clinton C.F. and Franklin C.F.  (Dkt. Nos. 26-16 at 5-6; 26-20 at 4; 26-21 at 11; 26-23 at 2; 26-24 at 2).  Plaintiff's only documented complaint at Franklin C.F. regarding a lack of translation services was in December 2017, over two months after he filed the grievance relative to this action.  (Dkt. No. 26-19, 26-25). There is no indication that plaintiff's submission and appeal of grievance FKN-13836-17 was hindered by a denial of translation services, nor does plaintiff's deposition testimony support such an allegation.  (Dkt. Nos. 26-9 at 83, 85-87, 89-93, 108-111, 114-115; 26-21).

deliberate indifference to medical needs are claims "with respect to prison conditions" under Section 1997(e) and, as such, must be exhausted under the PLRA.  *See Davis v. Reilly*, 324 F. Supp. 2d 361, 365 (E.D.N.Y.2004) ("Claims asserting deliberate indifference concerning medical care are allegations that fall within the exhaustion requirement of the PLRA.") (internal quotation marks and citations omitted); *Cruz v. Jordan*, 80 F. Supp. 2d 109, 116 (S.D.N.Y.1999) (collecting cases and explicitly holding that "plaintiff's claim concerning defendants' deliberate indifference to his medical needs is an action 'with respect to prison conditions'"); *see also Abney v. McGinnis*, 380 F.3d 663 (2d Cir.2004) (applying exhaustion analysis in case alleging deliberate indifference to plaintiff's medical needs).  Accordingly, for the foregoing reasons, the court finds that plaintiff has not established an issue of material fact as to the inapplicability or unavailability of administrative remedies.

The proper remedy where a prisoner has failed to satisfy the exhaustion requirement is to dismiss the complaint without prejudice, to give the inmate a chance to exhaust his administrative remedies and then refile his complaint." *Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009); see also *Morales v. Mackalm*, 278 F. 3d 126, 128 (2d Cir. 2002) (dismissal for failure to exhaust should be without prejudice to refiling following exhaustion), abrogated on other grounds by *Porter v. Nussle,* 534 U.S. 516 (2002). Dismissal is required even in cases where the exhaustion requirement is met after the filing of the complaint. See *Rossi v. Fischer*, No. 13-CV-3167, 2015

12

WL 769551, at *4 (S.D.N.Y. Feb. 24, 2015); *Couvertier v. Jackson*, No. 9:12-CV-1282 (DNH/DEP), 2014 WL 2781011, at *3 (N.D.N.Y. June 19, 2014) ("In the event the defendant establishes that the inmate plaintiff failed to fully complete [ ] the administrative review process prior to commencing the action, the plaintiff's complaint is subject to dismissal.") (internal citation and quotation marks omitted); *Chalif v. Spitzer*, No. 9:05-CV-1355 (LEK/DEP), 2008 WL 1848650, at *13 (N.D.N.Y. Apr. 23, 2008) ("The fact that a grievance is filed, or the process is completed, subsequent to commencement of suit will not salvage an otherwise premature filing.").

Accordingly, as plaintiff did not fully exhaust his administrative remedies prior to commencing this action, it is recommended that defendant's motion be granted, and plaintiff's complaint be dismissed without prejudice.[4]

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No.

---

[4]Because the court recommends granting defendants' motion for summary judgment on the ground of lack of exhaustion of administrative remedies, this court does not reach the defendants' arguments related to the merit of plaintiff's claims. However, the court seriously questions plaintiff's ability to maintain a claim of deliberate indifference against the defendants. At this time, there is no evidence before the court that any defendant altered or fabricated the records identified by plaintiff – especially considering all but one record were created by non-parties. (Dkt. No. 26-28 at 8-15). At his deposition, plaintiff clarified that he is not actually claiming the defendants fabricated his medical records; plaintiff merely does not agree with various characterizations of his medical status and treatment as recorded in his medical history. (Dkt. No. 26-9 at 53-72). Nevertheless, plaintiff's medical records are replete with documentation acknowledging his history of cancer and the measures taken by DOCCS to provide plaintiff with appropriate treatment. (Dkt. No. 27). Indeed, plaintiff is noted to have complained about taking "multiple trips" for his cancer treatment, without any "progress," and that the trips were "physically draining him." (Dkt. No. 26-20 at 5).

26) be **GRANTED**, and the action be **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 6, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge

14